## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBIN SMITH,                         )
                                     )
    Plaintiff and                )
    Counterclaim Defendant,      )
                                     )
        v.                  )       1:11CV1139
                                     )
BANK OF THE CAROLINAS,               )
                                     )
    Defendant and                )
    Counterclaim Plaintiff.      )

### MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

The instant matter comes before the undersigned United States Magistrate Judge for disposition of Plaintiff's Motion to Amend Reply to Counterclaims (Docket Entry 38) and the Motion of Defendant Bank of the Carolinas for Leave to File Amended Counterclaim and Third Party Complaint (Docket Entry 57), as well as for a recommended ruling on Bank of the Carolinas' (1) Motions [sic] to Dismiss (Docket Entry 11); (2) Motion to Dismiss Plaintiff's Title VII Claim (Docket Entry 15); (3) Motion for Judgment on the Pleadings (Docket Entry 28); and (4) Motion to Dismiss Plaintiff's Wrongful Discharge Claim (Docket Entry 41). (See Docket Entries dated Mar. 19, 2012, Apr. 11, 2012, May 10, 2012, July 30, 2012; see also Docket Entries dated Dec. 30, 2011 (assigning case to undersigned Magistrate Judge and referring case to Amended Standing Order 30).)

For the reasons that follow, the undersigned will grant the
Motion of Defendant Bank of the Carolinas for Leave to File Amended
Counterclaim and Third Party Complaint (Docket Entry 57) (and
accordingly will deny Plaintiff's Motion to Amend Reply to
Counterclaims (Docket Entry 38) as moot) and will recommend the
denial of Bank of the Carolinas' Motion for Judgment on the
Pleadings (Docket Entry 28) as moot and/or unripe, the granting in
part of Bank of the Carolinas' Motions [sic] to Dismiss (Docket
Entry 11), and the denial of Bank of the Carolinas' remaining
Motions to Dismiss (Docket Entries 15, 41).

BACKGROUND

The instant action arises out of an employer-employee
relationship between Plaintiff and Bank of the Carolinas. (See
Docket Entry 8.) The Amended Complaint alleges that Bank of the
Carolinas employed Plaintiff subject to an employment agreement
(the "Employment Agreement") which provided for continually
renewing three-year terms. (See id. ¶¶ 10-11.) According to the
Amended Complaint, the Employment Agreement further declared that,
if Bank of the Carolinas terminated Plaintiff without cause, Bank
of the Carolinas "was to [pay] [Plaintiff] a salary continuation at
the current base salary for the remaining unexpired term of the
[Employment Agreement] . . . ." (Id. ¶ 13.) Purportedly, Bank of
the Carolinas terminated Plaintiff without cause and failed to

-2-

continue paying Plaintiff her salary as required by the Employment Agreement.  (Id. ¶¶ 16, 18.)

Plaintiff's Amended Complaint also alleges that, as of 2009, Plaintiff was the only female Executive Vice President of Bank of the Carolinas (id. ¶ 9), that Bank of the Carolinas did not terminate any of the male Executive Vice Presidents (id. ¶ 16), that Bank of the Carolinas paid other male employees of the same grade as Plaintiff and within two grades lower than Plaintiff a higher salary (with the exception of one "newly hired" male) (id. ¶ 19), and that Plaintiff did not receive the same benefits as similarly situated male employees (id. ¶¶ 23-25).

As a result of the foregoing, Plaintiff filed a Complaint, naming Bank of the Carolinas Corporation as Defendant, in the General Court of Justice, Superior Court Division, Davie County, North Carolina.  (Docket Entry 3.)  Plaintiff's Complaint alleged claims for (1) "Breach of Contract" (id. at 5-6); (2) "Title VII Claim For Sex Discrimination and Retaliation" (id. at 6-7); (3) "Wrongful Discharge and Treatment in Violation of North Carolina Public Policy" (id. at 7-8); and (4) "Violation of Equal Pay Act 29 USC 206(d)(1)" (id. at 8).  Bank of the Carolinas Corporation petitioned this Court for removal on the basis of federal question jurisdiction.  (See Docket Entry 1.)

Thereafter, Plaintiff filed an Amended Complaint (also in the General Court of Justice, Superior Court Division, Davie County,

-3-

North Carolina) maintaining the same four causes of action, but substituting "Bank of the Carolinas" for "Bank of the Carolinas Corporation" as Defendant. (See Docket Entry 8.) Bank of the Carolinas, a separate legal entity from Bank of the Carolinas Corporation and the proper party to this action, filed an Amended Notice of Removal (see Docket Entry 6), and, on that same day, a Motion for Substitution of Party, "pray[ing] that it be substituted for [Bank of the Carolinas] Corporation in this action *nunc pro tunc*" (Docket Entry 7 at 2). Said Motion identifies Bank of the Carolinas as a wholly-owned subsidiary of Bank of the Carolinas Corporation and notes that Bank of the Carolinas Corporation is a bank holding company with no employees. (See id. at 1.)[1]

Bank of the Carolinas then Answered Plaintiff's Amended Complaint (Docket Entry 10) and separately filed a Counterclaim against Plaintiff for: (1) "Complaint on Promissory Notes" (Docket Entry 13, ¶¶ 21-25); (2) "Fraud, Misrepresentation and Breach of Fiduciary Duty" (id. ¶¶ 26-33); and (3) "Unfair and Deceptive Trade Practices" (id. ¶¶ 34-38). Bank of the Carolinas' counterclaims rest on allegations that Plaintiff, while an employee of Bank of the Carolinas, fraudulently obtained two loans from Bank of the Carolinas on which she has failed to make payments, resulting in

---

[1] The Court previously granted that Motion. (Docket Entry 14.)

-4-

indebtedness to Bank of the Carolinas in excess of $100,000.00. (See id. ¶¶ 1-20.)

Bank of the Carolinas has now filed three separate Motions to Dismiss, entitled (1) Motions [sic] to Dismiss (Docket Entry 11); (2) Bank of the Carolinas' Motion to Dismiss Plaintiff's Title VII Claim (Docket Entry 15); and (3) Defendant Bank of the Carolinas' Motion to Dismiss Plaintiff's Wrongful Discharge Claim (Docket Entry 41), as well as a Motion for Judgment on the Pleadings on its first counterclaim (Docket Entry 28). In addition, Plaintiff has filed a Motion to Amend Reply to Counterclaims (Docket Entry 38) and Bank of the Carolinas filed a Motion for Leave to File Amended Counterclaim and Third Party Complaint (Docket Entry 57). Because Bank of the Carolinas' Motion for Leave to File Amended Counterclaim and Third Party Complaint potentially moots Plaintiff's Motion to Amend Reply to Counterclaims and Bank of the Carolinas' own previously-filed Motion for Judgment on the Pleadings, the undersigned addresses that Motion first.

<u>BANK OF THE CAROLINAS' MOTION TO AMEND</u>

Bank of the Carolinas "moves this Court for leave to file an Amended Counterclaim and Third Party Complaint against Plaintiff, Billy R. Smith, Sam Crowell, and the Estate of Robert E. Marziano." (Docket Entry 57 at 1.) Bank of the Carolinas claims that, since it filed its original Counterclaim, "it has learned through the course of its investigation and discovery in this action that

-5-

Plaintiff did not act alone in the fraudulent issuance of the self-serving loans for herself and her husband, Billy R. Smith . . . that serve as the basis for the Counterclaim, but rather with the knowledge, consent, and participation of former Bank employee and compliance officer Sam Crowell [] and former Bank President and Chief Executive Officer Robert E. Marziano []." (Id. ¶ 6.)

Given the procedural posture of the case, Bank of the Carolinas may "amend its pleading only with [Plaintiff's] written consent or the [C]ourt's leave." Fed. R. Civ. P. 15(a)(2). The applicable Rule further directs that "[t]he [C]ourt should freely give leave when justice so requires." Id. Under this standard, the Court has some discretion, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962). Reasons to deny leave to amend a pleading include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment," id.

Plaintiff claims that Bank of the Carolinas' instant Motion unduly delays this action (see Docket Entry 62 at 3-5) and constitutes bad faith litigation because "[Bank of the Carolinas] has not only created needless delay . . . by moving to amend its pleadings after filing a motion for judgment on those same

-6-

pleadings, but [Bank of the Carolinas] has also wasted this Court's resources, as well as [P]laintiff's resources, in filing these [M]otions" (id. at 5). However, given that Bank of the Carolinas filed the instant Motion in compliance with the deadlines established as a result of the Consent Motion for Modification of Scheduling Order Deadline to Add Parties or Amend Pleadings (see Docket Entry 53, ¶ 6; see also Docket Entry dated May 24, 2012 (granting said consent Motion)), to which Plaintiff agreed only slightly more than a month prior to the filing of the instant Motion (see Docket Entry 53), Plaintiff's contentions of undue delay and/or bad faith ring hollow. Having agreed to a modification of the Scheduling Order that allowed Bank of the Carolinas to make such a request to amend at the time it did, Plaintiff cannot now reasonably argue that the timing of the proposed amendments establishes undue delay or demonstrates bad faith. Moreover, Plaintiff has cited no authority in support of such a position. (See Docket Entry 62 at 3-5.)

In addition, Plaintiff contends that she will be "unduly prejudiced by [Bank of the Carolinas'] proposed amendment" (id. at 5-6) because "[Bank of the Carolinas'] motion to amend its pleadings serves as a tactic to gain additional discovery, now that it has exceeded the limitations set by this Court for reasonable discovery in this action." (Id. at 6.) Plaintiff, however, does not explain how an amendment that primarily involves the addition

-7-

of parties will increase the amount of discovery Bank of the Carolinas can obtain from Plaintiff. Moreover, to the extent Plaintiff receives any discovery demands she considers abusive, she has recourse. See Fed. R. Civ. P. 26(c).

Finally, Plaintiff claims that Bank of the Carolinas' proposed amendment qualifies as futile because the applicable statute(s) of limitations render at least some of the new claims untimely. (See Docket Entry 62 at 6-7.) Bank of the Carolinas replies: "The claims at issue are governed by N.C. Gen. Stat. § 1-52, which toll[s] the statute of limitations until discovery of the unlawful acts." (Docket Entry 63 at 7.) An amendment fails for futility if the proposed claim(s) could not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008). A Rule 12(b)(6) motion generally "cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred [except] . . . in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). The instant scenario does not represent one of the "rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint," id.,

-8-

and thus the Court cannot say that Bank of the Carolinas' proposed amendment is futile due to untimeliness.[2]

Under these facts, the Court (per the undersigned, <u>see generally</u> <u>Everett v. Prison Health Servs.</u>, 412 F. App'x 604, 605 & n.2 (4th Cir. 2011); <u>Deberry v. Davis</u>, No. 1:08CV582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr. 19, 2010) (unpublished)), will grant the instant Motion.[3]

---

[2] Moreover, Plaintiff's brief states: "Should Bank of the Carolinas' motion be granted, [P]laintiff will argue that the statute of limitations has expired as to <u>several</u> of the new claims Bank of the Carolinas seeks to add to its counterclaim." (Docket Entry 62 at 7 (emphasis added).) Besides failing to specify which claims allegedly suffer from timeliness defects, Plaintiff's statement appears to concede that at least some proposed claims would survive a statute of limitations challenge.

[3] Granting Bank of the Carolinas' Motion for Leave to File Amended Counterclaim and Third Party Complaint renders Plaintiff's Motion to Amend her Answer to Bank of the Carolinas' original Counterclaim moot. <u>See</u> <u>Re/Max, LLC v. Underwood</u>, Civil No. WDQ-10-2367, 2012 WL 369578, at *3 n.17 (D. Md. Feb. 1, 2012) (unpublished) ("If the original complaint has no legal effect, <em>see Young</em> [<em>v. City of Mt. Ranier</em>], 238 F.3d [567,] 572 [(4th Cir. 2001)], neither does the amended answer filed in response to that complaint."); <u>Syngenta Crop Prot., Inc. v. U.S.E.P.A.</u>, 222 F.R.D. 271, 273 n.2 (M.D.N.C. 2004) (Tilley, C.J.) ("[The defendant's] Motion for Leave to Amend its Answer is moot because [the plaintiff's] filing of an amended complaint automatically gives [the defendant] the right to file a new answer."); <u>see also</u> Fed. R. Civ. P. 15(a)(3) ("Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."). Moreover, granting Bank of the Carolinas' instant Motion also renders Bank of the Carolinas' own previously-filed Motion for Judgment on the Pleadings (Docket Entry 28) moot and/or unripe. <u>See</u> <u>Manley v. Doe</u>, ___ F. Supp. 2d ___, ___, 2012 WL 359994, at *1 (E.D.N.C. Feb. 2, 2012) ("This court granted plaintiffs' motion to amend and denied defendants' motion for judgment on the pleadings as moot."); <u>Henderson v. Wells Fargo Bank</u>, Civil No. 3:09cv01, 2009 WL 1259355, at *4 n.4 (W.D.N.C. May 5, 2009) (unpublished) (continued...)

## MOTIONS TO DISMISS

Because the pending Motions to Dismiss filed by Bank of the Carolinas address Plaintiff's Amended Complaint, which the foregoing Motion to Amend would not affect, those Motions remain ripe for consideration. Although they do not explicitly so state, the undersigned construes the three Motions to Dismiss filed by Bank of the Carolinas as brought under Federal Rule of Civil Procedure 12(b)(6) which provides for dismissal due to failure to state a claim upon which relief can be granted. A complaint fails to state a claim if it does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)) (emphasis added). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is

---

³(...continued)
("Plaintiff is advised that if his Motion to Amend were allowed, the Motion for Judgment on the pleadings would have been moot, and defendant would then be required to file either an answer or other response to the Amended Complaint, which could include a new Motion for Judgment on the Pleadings based on the allegations in that amended pleading.").

inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[4]

To the extent the Court must draw conclusions about matters of North Carolina law in evaluating the instant Motions, "the highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." West v. American Tel. & Tel. Co., 311 U.S. 223, 236 (1940). However, "[a] state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them." Id.

Accordingly, "it is the duty of [a federal court facing a question of state law] to ascertain from all the available data what the state law is and apply it . . . ." Id. at 237. "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal

---

[4] "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Id.

I. Motions [sic] to Dismiss (Docket Entry 11)

Bank of the Carolinas' first Motion to Dismiss asks the Court: (1) to dismiss Plaintiff's claim for breach of contract as barred by res judicata; and (2) to dismiss or to strike all claims in the Amended Complaint alleging or referencing retaliation and/or harassment. (Docket Entry 11 at 1.)

A. *Plaintiff's Claim for Breach of Contract*

Bank of the Carolinas contends that "Plaintiff, having heretofore sued [Bank of the Carolinas] for Breach of Contract in Davie County, 10-CVM-374, and [] [having] reduced those claims to judgment, which judgment has been satisfied in full, is barred and estopped herein by virtue of *res judicata*, waiver and estoppel" from pursuing her claim of breach of contract in this Court. (Id.) Under North Carolina law,[5] "[r]es judicata precludes a second suit involving the same claim between the same parties or those in privity with them when there has been a final judgment on the merits in a prior action in a court of competent jurisdiction."

---

[5] "[T]hough the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . ." Allen v. McCurry, 449 U.S. 90, 96 (1980); see also Andochick v. Byrd, Civil Action No. 1:11-cv-739, 2012 WL 1656311, at *4 (E.D. Va. May 9, 2012) (unpublished) (citing same).

<u>Moody v. Able Outdoor, Inc.</u>, 169 N.C. App. 80, 84, 609 S.E.2d 259, 261 (2005) (citation omitted). Moreover, "[a] judgment operates as an estoppel not only as to all matters actually determined or litigated in the proceeding, but also as to all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination." <u>Id.</u>

Accordingly, under North Carolina law, res judicata properly applies where a litigant can prove: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits." <u>Id.</u> Res judicata bars Plaintiff's claim for breach of contract under this standard.

First, a final judgment on the merits was reached in Plaintiff's previous breach of contract suit against Bank of the Carolinas, in that a state court entered a judgment in favor of Plaintiff as to her claim for breach of the "Noncompetition; Confidentiality" provision of the Employment Agreement. (<u>See</u> Docket Entry 11-3 at 2.)

Second, an identity of the causes of action exists as to the two cases. Although Plaintiff now alleges breach of contract under a different provision of the Employment Agreement than she did previously, both her past and present breach of contract claims involve monies owed under the Employment Agreement and Plaintiff

-13-

"could and should have brought [them] forward for determination [in a single proceeding]," Moody, 169 N.C. App. at 84. See, e.g., Phoenix Canada Oil Co., Ltd. v. Texaco Inc., 749 F. Supp. 525, 535 (S.D.N.Y. 1990) ("Where an action includes a cause of action for breach of a particular contract, a second action seeking additional recovery from breach of that same contract is generally considered part of the same factual 'transaction' and is precluded, where the grounds for additional recovery might have been included in the first action.")[6]

Third, no dispute exists as to identity of the parties. Both Plaintiff and Defendant remain the same in both cases.

In sum, the Court should grant Bank of the Carolinas' request for dismissal of Plaintiff's breach of contract claim because allowing Plaintiff to proceed with a second breach of contract claim arising from the Employment Agreement when she could have brought that claim along with her earlier breach of contract claim arising from the Employment Agreement would disserve the goals of efficiency and judicial economy which res judicata aims to promote. See, e.g., Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 329 F. Supp. 2d 574, 580 (D. Md. 2004) ("Regardless of the specific

---

[6] Plaintiff does not argue that her instant claim for breach of contract remained unaccrued at the time she filed the prior action. (See Docket Entry 31 at 3-8.) Nor has Plaintiff cited any authority to support her contention that the contractual provision she litigated previously qualifies as a "divisible" portion of the Employment Agreement. (See id.)

provision that [the plaintiff] alleges was breached, the factual predicate of [the breach of contract claims in the two lawsuits] is the Franchise Agreement between [the plaintiff and the defendant]. Both lawsuits involve breaches of the same contract, committed by the same party and question the extent of the parties' agreed upon obligations. . . . Granting [the plaintiff] leave to pursue its [breach of contract] claims in the new action would frustrate the policies underlying the res judicata doctrine, put the parties to the cost and vexation of multiple lawsuits, deplete judicial resources, foster inconsistent decision, and diminish reliance on judicial decisions." (internal quotation marks omitted)).[7]

---

[7] Plaintiff's decision to bring her prior breach of contract claim in small claims court does not compel a different result. In Holloway v. Holloway, ___ N.C. App. ___, ___, 726 S.E.2d 198, 202 (2012), the North Carolina Court of Appeals held that res judicata did not bar a litigant from bringing a claim in a separate action where that claim met the definition in N.C. Gen. Stat. § 1A-1, Rule 13(a) of a compulsory counterclaim in a prior action. The court rested its finding in part on the fact that the counterclaim could not have been brought in the prior action because the prior action arose in small claims court, such that the counterclaim, exceeding $5,000, fell outside that court's jurisdiction; more specifically, the court noted that N.C. Gen. Stat. § 7A-219 bars "counterclaim[s], cross claim[s], or third-party claim[s] which would make the amount in controversy exceed the jurisdictional amount." Holloway, ___ N.C. App. at ___, 726 S.E.2d at 202. Here, unlike on the facts in Holloway where the defendant with the compulsory counterclaim was subject to the plaintiff's forum choice, Plaintiff chose the forum when bringing the initial claim, thereby limiting her own means of recovery. On similar facts, another court noted: "The plaintiff chose her venue, she should not only be able to take advantage of the benefits of that choice, but should also be bound by the consequences." Hindmarsh v. Mock, 57 P.3d 803, 806 (Idaho 2002). Similarly, the United States District Court for the Eastern District of New York observed that a litigant's "failure to bring her cause of action in the appropriate court in the first place does not trump principles of res
(continued...)

B.  *Plaintiff's References to Retaliation and Harassment*

Bank of the Carolinas also contends that Plaintiff has no cognizable claim for either retaliation or harassment and urges the Court to strike or to dismiss those claims. (See Docket Entry 12 at 4, 8.)[8]  In this regard, Bank of the Carolinas notes that Plaintiff's Amended Complaint alleges a "Title VII Claim for Sex Discrimination and Retaliation" (Docket Entry 8 at 6 (emphasis added)) and that, within her claims for "Wrongful Discharge and Treatment in Violation of North Carolina Public Policy Against Discrimination" and "Violation of Equal Pay Act 29 USC 206(d)(1)," Plaintiff includes allegations referencing "retaliation" by Bank of the Carolinas (Docket Entry 8, ¶¶ 44, 45, 50). (See Docket Entry 12 at 4-8.)  Bank of the Carolinas also takes issue with Plaintiff's use of the word "harassment" in her wrongful discharge claim (Docket Entry 8, ¶ 44). (See Docket Entry 12 at 8.)

The elements of a retaliation claim are: "(1) [the plaintiff] engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the

_____

[7](...continued)
judicata." Weitz v. Wagner, No. CV-07-1106 (ERK)(ETB), 2008 WL 5605669, at *6 n.5 (E.D.N.Y. July 24, 2008) (unpublished); see also Davenport v. North Carolina Dep't of Transp., 3 F.3d 89, 97 n.8 (4th Cir. 1993) ("[A] plaintiff's invocation of a state forum that can't handle all her claims is at risk of preclusion . . . .").

[8] Plaintiff did not address Bank of the Carolinas' contentions regarding "retaliation" or "harassment" in her Response. (See Docket Entry 31.)  Under the Local Rules of this Court, said failure generally warrants granting the relief requested.  M.D.N.C. LR7.3(k).

-16-

protected activity and the asserted adverse action." Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011). The Amended Complaint fails to identify any protected action by Plaintiff. (See Docket Entry 8.) Rather, the Amended Complaint alleges that Bank of the Carolinas "retaliated against [P]laintiff because of her sex" and lists a number of "discriminatory and retaliatory acts" which amount to nothing more than assertions that Bank of the Carolinas treated her unequally in comparison to her male counterparts. (See id. ¶ 39.) It appears that the Amended Complaint simply uses the terms "discrimination" and "retaliation" interchangeably. Because "discrimination" and "retaliation" represent distinct claims under Title VII and Plaintiff has not pled facts sufficient to support a retaliation claim, the Court should strike all references to "retaliation" in the Amended Complaint in order to avoid confusion. See Fed. R. Civ. P. 12(f) ("The court may strike from any pleading . . . any . . . immaterial [or] impertinent . . . matter.").

The Court should likewise strike the Amended Complaint's references to "harassment." "To demonstrate sexual harassment . . ., a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's sex . . .; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Mosby-Grant v. City

-17-

_of Hagerstown_, 630 F.3d 326, 334 (4th Cir. 2010) (internal quotation marks and citation omitted). However, Plaintiff's references to harassment appear solely as follows:

> It is the public policy of the State of North Carolina, as expressed in N.C.Gen.Stat. § 143-422.2, that employees be free from sexual harassment, discrimination and retaliatory treatment in their employment. It is a violation of the public policy of North Carolina to harass, discriminate or retaliate against an employee based on her gender, and her reports of and opposition to sexual harassment, or to discharge her on the same grounds.

(Docket Entry 8, ¶ 44.) Plaintiff does not otherwise appear to pursue a claim of hostile work environment/harassment, nor does she include factual matter consistent with such a claim. (See Docket Entry 8.) Accordingly, the Amended Complaint's references to "harassment" should be stricken. See Fed. R. Civ. P. 12(f).

The Amended Complaint's wayward terminology does not warrant any additional action. In other words, after striking Plaintiff's references to harassment and retaliation, the Court should allow Plaintiff to pursue her "Title VII Claim for Sex Discrimination," as well as her claims for "Wrongful Discharge and Treatment in Violation of North Carolina Public Policy Against Discrimination" and "Violation of Equal Pay Act 29 USC 206(d)(1)."

II. <u>Bank of the Carolinas' Motion to Dismiss Plaintiff's Title VII Claim (Docket Entry 15)</u>

Next, Bank of the Carolinas moves to dismiss Plaintiff's Title VII claim "on grounds that [her] [C]omplaint was untimely filed against the wrong defendant." (Docket Entry 15 at 1.) Bank of the

-18-

Carolinas offers two arguments in support of this position. First, Bank of the Carolinas contends that Plaintiff failed to commence this action within 90 days of the receipt of Notice of Right to Sue from the Equal Employment Opportunity Commission as required under 42 U.S.C. § 2000e-5(f)(1). (See Docket Entry 16 at 4-8.) Second, Bank of the Carolinas argues that, even if Plaintiff timely asserted a Title VII claim, her original Complaint named the wrong party as Defendant and the substitution of a new party does not relate back under North Carolina law. (See id. at 8-10.)

Plaintiff responds that, because she properly moved for an extension of time to file her Complaint under Rule 3 of the North Carolina Rules of Civil Procedure, she timely commenced this action. (See Docket Entry 32 at 5-7.) In addition, Plaintiff argues that any misnomer should not affect the timeliness of her Title VII claim because the substitution of Bank of the Carolinas for Bank of the Carolinas Corporation relates back under North Carolina law and because Bank of the Carolinas received actual notice (evidenced in part by Bank of the Carolinas' motion seeking to substitute itself for Bank of the Carolinas Corporation nunc pro tunc (Docket Entry 7)). (See id. at 7-11.)[9]

---

[9] Plaintiff also contends that both the Motion to Dismiss Plaintiff's Title VII Claim and the Motion to Dismiss Plaintiff's Wrongful Discharge Claim violate Fed. R. Civ. P. 12(g)(2) because they raise 12(b)(6) defenses which Bank of the Carolinas could have brought in its earlier 12(b)(6) motion. (See Docket Entry 32 at 5.) "Simply stated, the objective of [Rule 12(g)] is to eliminate
(continued...)

A.    *Timely Commencement of the Action*

A plaintiff pursuing a Title VII action must commence suit within 90 days of receipt of the Notice of Right to Sue. 42 U.S.C. § 2000e-5(f)(1). Plaintiff exercised her right to bring her action in state court. <u>Lassiter v. LabCorp Occupational Testing Servs., Inc.</u>, 337 F. Supp. 2d 746, 751 (M.D.N.C. 2004) (Bullock, J.) ("A plaintiff may file suit alleging a violation of Title VII in either state or federal court." (citing <u>Yellow Freight Sys., Inc. v. Donnelly</u>, 494 U.S. 820, 823 (1990)). As noted in <u>Lassiter</u>, "[t]he North Carolina Rules of Civil Procedure do not limit the commencement of a lawsuit to the filing of a complaint. A Plaintiff may, alternatively, commence an action by filing for an extension of time and by securing a summons from the state court." <u>Id.</u> (citation omitted). Accordingly, by requesting an extension under Rule 3 of the North Carolina Rules of Civil Procedure and having a summons issued within the applicable statutory period (<u>see</u>

---

[9](...continued)
unnecessary delay at the pleading stage." <u>Rauch v. Day & Night Mfg. Corp.</u>, 576 F.2d 697, 701 n.3 (6th Cir. 1978). "[D]istrict courts have 'overlook[ed] a 12(g) defect' in order to serve the purpose underlying the rule." <u>Adams v. Tennessee</u>, No. 3:04-cv-00346, 2011 WL 3236609, at *3 (M.D. Tenn. July 29, 2011) (unpublished) (quoting <u>Davis v. City of Dearborn</u>, No. 2:09-CV-14892, 2010 WL 3476242, at *4 (E.D. Mich. Sept. 2, 2010) (unpublished)). The undersigned finds no indication that Bank of the Carolinas filed said Motions with the intent to delay these proceedings. Moreover, Bank of the Carolinas could have included the arguments at issue in a motion for judgment on the pleadings. <u>See</u> Fed. R. Civ. P. 12(h)(2)(B). Accordingly, on the facts of this case, the Court should exercise its discretion to decide Bank of the Carolinas' instant Motions on their merits.

Docket Entry 4), Plaintiff timely commenced this action. See Lassiter, 337 F. Supp. 2d at 751-52.

Bank of the Carolinas urges the Court to depart from the decision in Lassiter, contending that said decision is "not free from doubt." (Docket Entry 16 at 7.) To support this argument, Bank of the Carolinas cites Cannon v. Kroger Co., 832 F.2d 303 (4th Cir. 1987), and Henderson Fruit & Produce Co. v. United States, 181 F. Supp. 2d 566 (E.D.N.C. 2001), two cases which declined to allow Rule 3 of the North Carolina Rules of Civil Procedure to extend the applicable period for commencing an action later removed to federal court. However, the reasoning in Henderson rested largely on considerations of sovereign immunity - an issue not applicable on the instant facts. See Henderson, 181 F. Supp. 2d at 568. Moreover, as Bank of the Carolinas acknowledges (see Docket Entry 16 at 7), this Court has previously noted that Cannon specifically addresses "hybrid" section 301/fair representation claims under the National Labor Relations Act. See Sheaffer v. County of Chatham, 337 F. Supp. 2d 709, 725 (M.D.N.C. 2004) (Osteen, Sr., J.) ("The reasoning of Cannon, however, makes clear that the rationale for barring the operation of Rule 3 was motived by a desire for uniformity in 'hybrid' cases that had been expressed by the Supreme Court.") In fact, the Court, in the more recently decided Sheaffer, found, like Lassiter, that by acting in compliance with Rule 3 of the North Carolina Rules of Civil Procedure, the

-21-

plaintiff in that action did not run afoul of a similar time restriction for bringing suit on an Americans with Disabilities Act claim. See id. at 724-25. Under these circumstances, the Court should reject the position taken by Bank of the Carolinas on this issue.

    B.   *Relation Back of Party Substitution*

    Bank of the Carolinas next argues that, because Plaintiff named the wrong Defendant in the Complaint and the addition of a new party does not relate back under North Carolina law, the action fails as untimely. This argument lacks merit.

    The undersigned notes initially that "[t]he 90-day filing requirement is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Crabill v. Charlotte Mecklenburg Bd. of Educ., 423 F. App'x 314, 321 (4th Cir. 2011) (internal quotation marks omitted). Moreover, shortly after Plaintiff filed her Amended Complaint and Bank of the Carolinas filed the Amended Petition to remove the instant action to this Court, Bank of the Carolinas filed a Motion for Substitution of Party "pray[ing] that it be substituted for [Bank of the Carolinas] Corporation in this action *nunc pro tunc*" (Docket Entry 7 at 1-2), and the Court granted Bank of the Carolinas' Motion (see Docket Entry 14).

On these facts, the Court need not conduct an analysis of relation back under North Carolina law, because Bank of the Carolinas' own prior litigation conduct has rendered the matter moot. In other words, having previously granted Bank of the Carolinas' own Motion substituting itself nunc pro tunc in this action, the Court should not now find that Bank of the Carolinas only became a Party to this action outside of the period allowed for commencing suit. Accordingly, the Court also should deny this aspect of the instant Motion.

## III. Defendant Bank of the Carolinas' Motion to Dismiss Plaintiff's Wrongful Discharge Claim (Docket Entry 41)

Through its final Motion to Dismiss, Bank of the Carolinas "moves the Court . . . to dismiss Plaintiff's Third Claim for Relief on grounds that there is no common-law action for wrongful discharge in North Carolina where the terminated employee's employment and termination are governed by an employment contract setting forth the conditions of termination and the remedies therefor." (Docket Entry 41 at 1.) In response, Plaintiff contends that, because she may plead alternate theories for relief, the Court should deny Bank of the Carolinas' instant Motion. (See Docket Entry 45 at 7-9). Plaintiff's argument has merit.

The Federal Rules of Civil Procedure allow pleading in the alternative. See Fed. R. Civ. P. 8(d)(2). This Court, in fact, has allowed a plaintiff to allege a claim for wrongful discharge where the plaintiff also asserted that an employment agreement

-23-

governed the employer-employee relationship at issue.  See Myers v. Roush Fenway Racing, LLC, No. 1:09CV508, 2010 WL 2765378, at *3 (M.D.N.C. July 12, 2010) (Beaty, C.J.) (unpublished) ("At this early stage in the proceedings, . . . under the liberal pleading rules of the Federal Rules of Civil Procedure, a plaintiff may properly plead alternate causes of action in the complaint. . . . Accordingly, at this juncture in the present case, the Court finds that [the] [p]laintiff is not precluded from alternatively pleading a cause of action for wrongful discharge, in the event that [the] [p]laintiff served [the] [d]efendant as an at-will employee, rather than pursuant to an employment agreement." (internal citations omitted)).[10]  Accordingly, the Court should deny Bank of the Carolina's Motion to Dismiss Plaintiff's Wrongful Discharge Claim.

## CONCLUSION

Under the standard set forth in Rule 15(a) of the Federal Rules of Civil Procedure, the undersigned will grant the Motion of Defendant Bank of the Carolinas for Leave to File Amended Counterclaim and Third Party Complaint (Docket Entry 57).  That decision renders both Plaintiff's Motion to Amend Reply to Counterclaims (Docket Entry 38) and Bank of the Carolinas' Motion

---

[10] In support of its position, Bank of the Carolinas cites Myers v. Roush Fenway Racing, LLC, No. 1:09CV508, 2009 WL 5215375 (M.D.N.C. Dec. 28, 2009) (Dixon, M.J.) (unpublished), which recommended dismissal of a plaintiff's claim for wrongful discharge because the plaintiff also alleged that an employment agreement governed.  Chief Judge Beaty, however, specifically declined to adopt that portion of the Recommendation.  See Myers, 2010 WL 2765378, at *3.

for Judgment on the Pleadings (Docket Entry 28) moot and/or unripe. Next, the Court should grant in part Bank of the Carolinas' Motions [sic] to Dismiss (Docket Entry 11) in that the Court should find Plaintiff's claim for breach of contract barred by res judicata and should strike all references to "retaliation" and "harassment," but otherwise should allow Plaintiff to pursue her "Title VII Claim for Sex Discrimination," as well as her claims for "Wrongful Discharge and Treatment in Violation of North Carolina Public Policy Against Discrimination" and "Violation of Equal Pay Act 29 USC 206(d)(1)." Finally, Bank of the Carolinas' remaining Motions to Dismiss lack merit.

**IT IS THEREFORE ORDERED** that the Motion of Defendant Bank of the Carolinas for Leave to File Amended Counterclaim and Third Party Complaint (Docket Entry 57) is **GRANTED** and that Bank of the Carolinas shall file an Amended Counterclaim and Third Party Complaint substantially in the form of the attachment to said Motion by October 19, 2012. Within 60 days of service of that Amended Counterclaim and Third-Party Complaint, the Parties shall file a status report setting out their joint and/or respective positions regarding any modifications to the Scheduling Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Reply to Counterclaims (Docket Entry 38) is **DENIED AS MOOT.**

**IT IS RECOMMENDED** that Bank of the Carolinas' Motions [sic] to Dismiss (Docket Entry 11) be granted in part in that the Court

-25-

should dismiss Plaintiff's claim for breach of contract and should strike references in the Amended Complaint to "retaliation" and "harassment" but otherwise should allow Plaintiff to pursue her "Title VII Claim for Sex Discrimination," as well as her claims for "Wrongful Discharge and Treatment in Violation of North Carolina Public Policy Against Discrimination" and "Violation of Equal Pay Act 29 USC 206(d)(1)."

**IT IS FURTHER RECOMMENDED** that Bank of the Carolinas' Motion to Dismiss Plaintiff's Title VII Claim (Docket Entry 15) and Motion to Dismiss Plaintiff's Wrongful Discharge Claim (Docket Entry 41) be denied.

**IT IS FURTHER RECOMMENDED** that Bank of the Carolinas' Motion for Judgment on the Pleadings (Docket Entry 28) be denied as moot and/or unripe.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

October 11, 2012